UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OSBIEL LOPEZ, a Minor, by his Mother and Next Friend, GLORIA LOPEZ and GLORIA LOPEZ individually,<br><br>Plaintiffs,<br><br>v.<br><br>VILLAGE OF CARPENTERSVILLE, a Municipal Corporation, DIANE GRAHAM, individually and in her official capacity, MARTIN GRUBER, individually and in his official capacity, SHERMAN HOSPITAL, an Illinois not-for-profit corporation, and JENNY LENTZ,<br><br>Defendants. | No. 07 C 5310<br>Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

This case arises out of the alleged misconduct of paramedics toward a four-month-old child on the basis of his race. Plaintiffs filed their complaint on September 20, 2007, and subsequently filed their Amended Complaint on June 10, 2009. Defendants Sherman Hospital and Jenny Lentz ("Lentz") as well as the Village of Carpentersville ("Carpentersville"), Diane Graham ("Graham") and Martin Gruber ("Gruber") now come with motions to dismiss Plaintiffs' amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Because the arguments asserted by all Defendants are substantially similar, I will address both motions in this Order. For the foregoing reasons I grant Defendants' motions to dismiss.

**I. BACKGROUND**

On September 18, 2006 four-month-old Osbiel Lopez ("Osbiel") suffered seizures that resulted in severe brain damage. Plaintiffs allege that had Osbiel received treatment earlier, his

medical prognosis would have been better.  Esther Carrera ("Esther") is a friend of Osbiel's mother, Gloria Lopez ("Gloria"), and, at the time of the seizure, had been babysitting for Osbiel, for approximately two weeks.  Osbiel, Gloria, and Esther are all of Hispanic descent.  Esther speaks little, if any, English.

At approximately 10:23 a.m. on September 18, 2006, Esther noticed that Osbiel was "not acting normally" and called emergency 911.  The 911 operator requested a Spanish interpreter and Esther told the interpreter that Osbiel was pale, and looked like he "want[ed] to stop breathing."  Subsequently, paramedics arrived and an interpreter was once again used via the telephone.  Esther states that Osbiel's "eyes rolled into the back of his head and his body became very stiff in the presence of the paramedics."  Esther alleges that although she had additional questions to ask the paramedics, they ended her call with the interpreter before she was able to make her inquiries.  Also, after the paramedics ended the phone call with the interpreter, the paramedics had Esther sign a Release and Consent Not to Transfer Order that was written in English.  Esther did not understand what she was signing, and attempts to contact Gloria were unsuccessful.  The paramedics left without transferring Osbiel to the hospital; the ambulance report states that the child was acting normally when the paramedics departed.

The events described above took place in Carpentersville, Illinois.  At this time, Plaintiffs allege that Carpentersville was engaged in a debate about illegal immigration and an ordinance titled "Illegal Alien Immigration Relief Act" (the "Act") had been proposed.  Plaintiffs allege that one motivation for the proposed Act was Carpentersville's expenditure of $372,000 in 2005 on ambulance fees for illegal residents.  The Act was criticized as being racist and "targeting Hispanics."  Furthermore, Plaintiffs state that a local group in favor of the Act, Fox Valley

Citizens for Legal Immigration, was allowed to conduct meetings in the Carpentersville Fire Station.

Plaintiffs allege nine counts in their amended complaint: (1) Count I alleges a violation of 42 U.S.C § 1983 by Graham and Gruber, (2) Count II alleges a violation of Plaintiffs' civil rights under 42 U.S.C § 1985 by Graham and Gruber; (3) Count III alleges a civil rights violation under 42 U.S.C § 1981 by Graham and Gruber; (4) Count IV alleges willful and wanton negligence by Graham, Gruber and Carpentersville; (5) Count V alleges a violation of 42 U.S.C § 1983 by Carpentersville; (6) Count VI alleges a civil rights violation under 42 U.S.C § 1985 by Carpentersville; (7) Count VII alleges a civil rights violation of 42 U.S.C § 1981 by Carpentersville; (8) Count VIII alleges negligence under the Illinois law against Sherman Hospital and Lentz; and (9) Count IX alleges a violation of the Illinois Family Expense Act 750 ILCS 65/15 by Carpentersville, Graham, Gruber, Sherman Hospital, and Lentz.

## II. STANDARD OF REVIEW

A Motion to Dismiss under Rule 12(b)(6) requires that I analyze the legal sufficiency of the complaint and not the factual merits of the case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir.1998). I must take all facts alleged in Plaintiffs' complaint as true and draw all reasonable inferences from those facts in favor of Plaintiffs. *Caldwell v. City of Elwood*, 959 F.2d 670, 671 (7th Cir.1992). Plaintiffs, for their part, must do more than solely recite the elements for a violation; they must plead with sufficient particularity so that their right to relief is more than mere conjecture. *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs must plead their facts so that, when accepted as true, they show the plausibility of their claim for relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Plaintiffs must do more than

plead facts that are "consistent with Defendants' liability" because that only shows the possibility, not the plausibility, of their entitlement to relief. *Id.* (internal quotations omitted).

A motion to dismiss pursuant to Rule 12(b)(1) requires that I evaluate this Court's jurisdiction over the case at hand. Ensuring the existence of subject matter jurisdiction is the court's first duty in every lawsuit. *McCready v. White,* 417 F.3d 700, 702 (7th Cir.2005). In considering this motion, I must accept Plaintiffs' well-pleaded factual allegations as true and draw reasonable inferences from those allegations in Plaintiffs' favor. *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 625 (7th Cir.2007).

### III. DISCUSSION

Defendants argue that this is a paramedic malpractice action that belongs in state court. In support of this claim, Defendants state that there is no constitutional duty for a municipality or its employees to provide emergency medical services for its citizens. *See, Archie v. City of Racine*, 847 F.2d 1211, 1220 (7th Cir. 1988). Defendants ask this Court to decline to exercise supplemental jurisdiction over Plaintiffs' state claims pursuant to 28 U.S.C. § 1367(c)(2) because the issue of paramedic malpractice predominates this claim. Plaintiffs assert federal jurisdiction over their Amended Complaint by alleging that Graham, Gruber and Carpentersville violated 42 U.S.C. §§ 1983, 1985, and 1981.

    A. <u>Plaintiffs' Federal Counts I, II, III, V, VI, and VII Fail</u>

        1. <u>Plaintiffs Cannot Succeed Under 42 U.S.C. § 1983</u>

Section 1983 provides a cause of action to persons whose constitutional rights have been violated under color of state or local law. 42. U.S.C. § 1983. Plaintiffs allege that Carpentersville had a practice or policy of limiting emergency medical services to persons of

4

Hispanic ancestry. Plaintiffs' argument is that "there is some evidence that the paramedics impermissibly considered a patient's race and immigration status when rendering treatment." To prevail in a § 1983 action against a municipality, a plaintiff must establish that: (1) he was deprived of a right secured by the Constitution, and (2) the deprivation was brought upon him by a person acting under color of state law. 42 U.S.C. § 1983. A municipality may be held liable for violating its residents' rights when it implements or executes an unconstitutional policy. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 90 (1978). Plaintiffs concede that there was no unconstitutional, officially adopted policy by Carpentersville. Plaintiffs argue, however, that a de facto policy of discrimination did exist in violation of federal law.

I do not reach the issue of Carpentersville's alleged policy of discrimination because Plaintiffs have not successfully alleged that there was a deprivation of a Constitutional right. The Constitution itself does not require a state to supply effective rescue services. *Archie*, 847 F.2d 1220. Furthermore, as the Seventh Circuit noted in *Salazar v. City of Chicago*, even if a city chooses to provide rescue services, there is "no constitutional duty to provide competent services to people not in custody."[1] 940 F.2d 233, 237 (7th Cir. 1991). Because this right is not constitutionally guaranteed, Plaintiffs' § 1983 claim against Carpentersville must fail.

Plaintiffs also allege that Defendants Graham and Gruber violated § 1983 by breaching their duties to properly evaluate and timely transport Osbiel because of his Hispanic ancestry. Plaintiffs argue that although the government does not have a general duty to provide competent rescue services, a duty to exercise ordinary care arises when an individual establishes a special relationship with a government entity. *DeShaney v. Winnebago County Dept. Of Soc. Servs.*, 489

---

[1] I address the issue of Osbiel's custody *infra*.

5

U.S. 189, 109 (1989). One situation in which a special relationship arises is when an individual is in "custody."

Here, Plaintiffs allege that a special relationship arose between paramedics Graham, Gruber and the child because his non-English speaking caretaker was unable to comprehensively communicate what was wrong with the child, and the paramedics therefore had a constitutional duty to discover the health issue. Plaintiffs assert that a "reasonable paramedic in their situation would have known that leaving the scene without proper consent and without discovering what was wrong with the infant would violate that child's constitutional rights." First, despite the fact that Esther did not speak English, she was able to effectively communicate to the paramedics via an interpreter which they provided. Second, Plaintiffs acknowledge in their complaint that when the paramedics departed they filed a report indicating that the baby was acting normally. Third, the cases cited by Plaintiffs to support the contention that Osbiel was in Defendants' custody are distinguishable from the case at hand because in this instance, the state never removed the child from his home, nor was the state the sole custodian of the child. *K.H. v. Morgan*, 914 F.2d 846, 849 (7th Cir. 1990) (state violated child's rights when she was deliberately removed from her parent's home and subsequently transferred to nine residences resulting in emotional damage); *Doe v. N.Y.C. Dept. of Soc. Servs.*, 649 F.2d 134, 141 (2nd Cir. 1981) (state violated custodial duty to child when it placed the child with sexually abusive foster parents). Here, Osbiel was never removed from his parents' home and placed in the care of the state. Instead, his mother left him in the care of Esther, a friend and babysitter. When Esther realized the child was acting ill, she called 911 and successfully spoke to an emergency operator, through the assistance of an interpreter. Later, she again used an interpreter to communicate with paramedics. Plaintiffs fail

to establish that a special relationship existed between the paramedics and Osbiel and further fail to establish that a constitutional right was violated. Accordingly, I dismiss Counts I and V.

### 2. Plaintiffs Cannot Succeed Under 42 U.S.C. § 1985

Section 1985 provides a cause of action to persons whose constitutional rights have been violated by those conspiring to deprive them of their rights and privileges. 42. U.S.C. § 1985. Plaintiffs allege that Graham and Gruber conspired to deny a person of Hispanic origin proper evaluation and EMS transportation to appropriate emergency departments. Plaintiffs also allege that Carpentersville violated § 1985 by implementing a policy which had a practice or policy of limiting emergency medical services to persons of Hispanic ancestry. Facts asserted to illustrate this policy are that: (1) "there is some evidence that the paramedics impermissibly considered a patient's race and immigration status when rendering treatment"; and (2) the Fox Valley Citizens of Legal Immigration's recurrent meetings in the Carpentersville fire station could have shaped an unofficially authorized policy "for rescue workers to factor in a person's immigration status when determining whether transport via ambulance to the hospital was necessary."

As I found *supra*, there is no constitutional right to effective rescue services. Therefore, Plaintiffs' counts II and VI must fail.

### 3. Plaintiffs Cannot Succeed Under 42 U.S.C. § 1981

Section 1981 provides equal protection under the law. 42 U.S.C. § 1981. Plaintiffs allege that Graham and Gruber violated their equal protection rights by not transporting Osbiel to the hospital based on his race, and that Defendants violated 42 U.S.C § 2000d by denying Osbiel proper EMS evaluation and transportation services based on his Hispanic origin. Plaintiffs further allege that Carpentersville violated their § 1981 rights through a pattern of practice and

policy of racial discrimination which denied Plaintiffs the full and equal benefit of the law, and that Carpentersville violated 42 U.S.C § 2000d by denying Osbiel proper EMS evaluation and transportation services based on his Hispanic origin.

Plaintiffs allege that Defendant paramedics failed to properly evaluate ad timely transport Osbiel to the hospital because he is Hispanic. As I found *supra*, there is no constitutional right to effective rescue services. Therefore, Plaintiffs' counts III and VII must fail.

### B. I Decline to Exercise Supplemental Jurisdiction Over the Remaining State Law Counts.

Defendants ask that I decline to exercise supplemental jurisdiction over the remaining Illinois state law counts, specifically allegations of negligence, willful and wanton negligence and violations of the Illinois Family Expense Act. District courts may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). As the remaining counts relate specifically to Illinois state law, I decline to exercise supplemental jurisdiction over the remaining counts.

## IV. CONCLUSION

For the foregoing reasons, I grant Defendants' motions to dismiss.

ENTER:

_James B. Zagel_
James B. Zagel
United States District Judge

DATE: December 22, 2009